Peter A. JOHNSON

v.

SHAINES & McEACHERN, P.A.

No. C–93–238–L.

United States District Court,
D. New Hampshire.

June 28, 1993.

Edgar D. McKean III, McKean, Mattson & Latici, P.A., Gilford, NH, for plaintiffs Peter A. Johnson and Grassy Knoll Associates.

Richard W. Renehan, Hill & Barlow, Boston, MA, and Margaret H. Nelson, Sulloway & Hollis, Concord, NH, for defendants Goldstein and Manello.

Richard Nelson, Nelson, Kinder, Mosseau & Gordon, Manchester, NH, for defendant Shaines.

## ORDER

LOUGHLIN, Senior District Judge.

This action was filed on April 30, 1993 by plaintiff Peter A. Johnson, general partner of Grassy Knoll Associates, a limited partnership, for alleged legal malpractice against the defendants Shaines & McEachern, P.A., and the G & M Law Group. Jurisdiction in this court is founded upon 28 U.S.C. § 1332(a)(1). Presently before the court is G & M Law Group's Motion to Dismiss pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6) of the Fed. R.Civ.P.

*Facts*

Plaintiff Peter Johnson, (hereinafter Johnson) a resident of Florida, is the general partner of Grassy Knoll Associates, a limited partnership with a principal place of business in Florida. This partnership was formed for the purpose of acquiring and leasing the former Town of Londonderry dump site as a sanitary landfill. In 1984 Johnson retained defendant Shaines & McEachern, P.A. of Portsmouth, New Hampshire (hereinafter "Shaines") to represent Johnson in a legal action to recover damages stemming from a lease with SCA Disposal Services of New England (hereinafter SCA). The lease pertained to the landfill site on Auburn Road, Londonderry, New Hampshire.

In August 1984, Shaines filed two state court actions against SCA, both of which were removed to this court. Johnson's claim involved SCA's obligation to correct hazardous waste problems on the landfill site. SCA allegedly failed to fulfill its obligation and the property was thereafter placed on the Environmental Protection Agency's National Priorities List in 1983. Johnson contends that in August 1984 Shaines failed to plead as a part of Johnson's damages the costs of remediation of the hazardous waste at the site. On March 13, 1986 Shaines was contacted by the EPA and was informed that remedial action would be taken and that Johnson as the current owner was potentially liable for response costs under CERCLA, 42 U.S.C. § 9606 et seq. Plaintiff contends that despite both having knowledge of these facts and being questioned on the issue by Johnson, Shaines did not file a motion to amend its pleadings to include a $10,000,000 claim for clean-up costs until well after the deadline for such pleadings had passed. On October 22, 1986 the trial court denied the motion to add the clean-up count as untimely filed. After trial, the jury returned a verdict for plaintiff in the amount of $620,000.

On August 3, 1988 Shaines initiated a second diversity action against SCA on behalf of Johnson to recover remediation and associated costs resulting from EPA's investigation. On May 7, 1990 the trial court granted summary judgment for SCA thereby dismissing the action holding that the action was barred by *res judicata*. This ruling was appealed to the First Circuit which upheld the judgment of the trial court.

Johnson claims in the present action that Shaines breached its duty of reasonable care by failing to include in the original action the claim for remediation costs thus giving rise to the present action for legal malpractice. Johnson alleges that shortly after Shaines undertook representation of Johnson, Shaines became affiliated with Goldstein and Manello, P.C. of Boston, Massachusetts (hereinafter Goldstein) and the two firms were referred to as the G & M Law Group. *Doc.* 8, Affidavit of Peter A. Johnson, para. 3. Johnson alleges Shaines specifically advised Johnson of the merger and informed Johnson that the legal resources of Goldstein were available to Shaines in its representation of Johnson. *Id.* at para. 4. Johnson claims that this affiliation influenced Johnson to maintain the attorney-client relationship to its conclusion in May 1991. *Id.* at para. 5.

*Discussion*

### 1) Personal Jurisdiction

Defendant G & M Law Group, and, to the extent it is an intended defendant, Goldstein moved for dismissal under Fed.R.Civ.P. 12(b)(2). The basis of this motion is two-fold. First, defendants contend that G & M Law Group is not a professional corporation and has no legal existence. Second, defendants contend that Shaines has not merged with

the G & M Law Group or with Goldstein and therefore there is no basis for jurisdiction over defendants.

*Standard of Review*

■ A motion to dismiss pursuant to 12(b)(2) involves the defense of lack of jurisdiction over the person. Plaintiff has the burden of proof to produce facts necessary to sustain jurisdiction over the defendant. *United States v. Arkwright, Inc.*, 690 F.Supp. 1133, 1138 (D.N.H.1988) (citations omitted); *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir.1992). Plaintiff must make a prima facie showing of jurisdiction supported by facts alleged in pleadings, affidavits, and exhibits. *Lex Computer & Management Corp. v. Eslinger & Pelton, P.C.*, 676 F.Supp. 399, 402 (D.N.H.1987). Such allegations are construed in its favor. *Id.; Arkwright* at 1138. "Plaintiff must go beyond the pleadings and make affirmative proof ... [and] may not rely on unsupported allegations in th[e] pleadings to make a prima facie showing of personal jurisdiction." *Boit* at 675. "The court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." *Lex* at 402. In determining whether a prima facie showing has been made, the district court is not acting as a factfinder. *Id.* It accepts properly supported proffers of evidence by a plaintiff as true. *Id.*

Goldstein, during the mid–1980's, entered into joint venture agreements with law firms in New England which firms were referred to as the G & M Law Group. Doc. 5, Affidavit of Robert B. Carpenter, para. 4. Goldstein contends, however, that G & M Law Group is not a professional corporation nor is it an entity with any separate legal existence. *Id.* at para. 5. Goldstein contends that although the joint venture agreement between itself and Shaines provided for the creation of "joint clients" who would be serviced by both firms and billed on behalf of both firms, the agreement provided that each firm would maintain its separate legal practices, including separate clients. *Id.* at para. 6–7. Goldstein contends that Johnson was not a joint client, *Id.* at para. 6, nor did Goldstein ever

perform any legal services for Johnson. *Id.* at para. 8.

Defendant Shaines also claims that at no time was Johnson ever a joint client of the defendants with respect to the dispute arising from the landfill site in Londonderry. Doc. 5, Affidavit of John McEachern, para. 2.

### a) Long-arm statute

■ This court may assert personal jurisdiction over Goldstein, a nonresident defendant, only if Johnson shows that Goldstein is subject to New Hampshire's long-arm statute and that assertion of jurisdiction is consistent with the due process, or minimum contacts, requirement of the United States Constitution. *Lex* at 402 (citations omitted); *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671 (1st Cir.1992); *Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law*, 787 F.2d 7, 9 (1st Cir.1986) (citations omitted). Because Goldstein & Manello, P.C., is a professional corporation, the applicable long-arm statute is New Hampshire RSA § 293–A:121 which provides in relevant part:

> If a foreign corporation makes a contract to be performed in whole or in part by either party in New Hampshire, or if the foreign corporation commits a tort in whole or in part in New Hampshire, the acts shall be deemed to be doing business in New Hampshire by the foreign corporation and shall be deemed equivalent to the appointment by a foreign corporation of the secretary of state of New Hampshire and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of the contract or tort.

New Hampshire RSA § 293–A:121. In determining whether jurisdiction may be exercised over a foreign corporation, this court must first determine whether the criteria of § 293–A:121 have been met before addressing federal due process issues. *Omni Hotels Management Corp. v. Round Hill Dev. Ltd.*, 675 F.Supp. 745 (D.N.H.1987).

■ Johnson's claim is one for legal malpractice which sounds in negligence and therefore jurisdiction under § 293–A:121 must be established, if at all, on the basis of a

tort committed in New Hampshire. Johnson contends that the firm of Goldstein & Manello, P.C. and Shaines & McEachern, P.A., through their joint venture agreement pursuant to which the firms were referred to as the "G & M Law Group", are either a partnership in fact or if such partnership did not exist then a partnership by estoppel existed under RSA § 304–A:16, discussed below. The same legal rules apply to both joint ventures and partnerships "as the '[p]arties in a joint venture stand in the same relationship to each other as the partners in a partnership.'" *Stone and Michaud Insurance, Inc. v. Bank Five For Savings,* 785 F.Supp. 1065, 1069 (D.N.H.1992).

As the rights and duties of partners are subject to the rules of agency, Goldstein, through its agent Shaines, would be subject to the personal jurisdiction of this court for the alleged tort committed by the partnership against Johnson in New Hampshire. *See* generally, 59A Am.Jur.2D Partnerships § 633 (1987).

> The general rule is that jurisdiction over a partner confers jurisdiction over the partnership ... because a partner is deemed by law and contract to be the partnership's agent ... [T]he activities of the partner are generally attributed to the partnership and jurisdiction over the partnership follows from the partner's contacts, if sufficient, regardless of the independent contacts between the partnership qua entity and the forum ... [T]he actions of a partner within the scope of a general partnership's purposes necessarily become the actions of the partnership. To attribute the partner's scope-of-business contacts to the partnership, therefore, is not only permissible, but mandated. For this reason, any forum able to exercise personal jurisdiction over the partner by reason of those activities must also be able to exercise jurisdiction over the partnership.

*Donatelli v. National Hockey League,* 893 F.2d 459, 467 (1st Cir.1990). This court's exercise of personal jurisdiction over Goldstein is therefore dependent upon Johnson's prima facie showing of the existence of a partnership relationship between the defendants.

Johnson contends that the relationship that existed between defendants was at the very least a partnership under New Hampshire RSA § 304–A:16, entitled "Partner By Estoppel", which provides in relevant part:

> I. When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.

> II. When a person has been thus represented to be a partner in an existing partnership, or with one or more persons not actual partners, he is an agent of the persons consenting to such representation to bind them to the same extent and in the same manner as though he were a partner in fact, with respect to persons who rely upon the representation. Where all the members of the existing partnership consent to the representation, a partnership act or obligation results; but in all other cases it is the joint act or obligation of the person acting and the persons consenting to the representation.

New Hampshire RSA 304–A:16 (1991). Estoppel runs in favor of Johnson if he can show that he had knowledge of the holding out of defendants as a partnership and that he relied on the apparent partnership to his detriment. *See* 59A Am.Jur.2D Partnerships § 678 (1987). The questions of whether defendants are a partnership in fact or, in the alternative, whether defendants have been held out as partners to Johnson so as to be estopped from denying such relationship are ones of fact for the jury. *Stone and Michaud Ins., Inc. v. Bank Five for Savings,*

785 F.Supp. 1065, 1069 (D.N.H.1992); 59A Am.Jur.2D Partnerships § 685 (1987).

■ In support of the estoppel claim, Johnson alleges that he became aware in late 1985 or early 1986 that Shaines had entered into an affiliation agreement with Goldstein but that no details of the affiliation were revealed to him. *See* Doc. 8, Affidavit of Peter A. Johnson, para. 3. Johnson was aware that Shaines and Goldstein were referred to as the G & M Law Group. *Id.* Johnson was allegedly told by Robert Shaines that the legal resources of Goldstein were available to Shaines for use in representing Johnson and Johnson relied on this representation. *Id.* at para. 4. Johnson also alleges that due to the complex nature of the litigation, Johnson's decision to continue with Shaines as trial counsel was influenced by the disclosure of the affiliation between Shaines and Goldstein, *Id.* at para. 5, and that throughout the period of representation Johnson relied upon such affiliation and believed that Shaines conferred with Goldstein. *Id.* at para. 7. Johnson claims that he was never informed as to the existence of any written joint venture agreement between Shaines and Goldstein or the G & M Law Group, nor was he informed of any limitation in such agreement that might have impacted the handling of his case. *Id.* at para. 6.

Johnson has also submitted copies of those pages from the 1986 edition of Martindale–Hubbell which lists Goldstein & Manello of Boston, Massachusetts as a "Partnership including Professional Corporations" and indicates that there is a Portsmouth, New Hampshire Affiliated Office: "Shaines, McEachern, Goldstein & Manello ..." *See* Doc. 8, Exhibit A. Johnson has also submitted a copy of Shaines & McEachern letterhead, which in the upper right hand corner of said letterhead is printed the following; "The G & M Law Group with affiliated offices in Boston, MA ...". *See Id.* Exhibit B.

Accepting the facts alleged by plaintiff as true, the court finds that plaintiffs have made a prima facie showing that personal jurisdiction exists over defendant Goldstein based on its alleged partnership relationship with Shaines. Such partnership may exist in fact or defendants may be estopped from denying its existence if one did not exist in fact. In either case it is a question of fact for the jury. Goldstein, as a partner of Shaines, would be liable for the actions of its agent Shaines with respect to the representation of Johnson in New Hampshire which representation provides the basis for the present suit.

b) **Due Process**

■ As the requirements of the long-arm statute have been met, the court must now determine whether Goldstein has sufficient contacts with New Hampshire so as to satisfy the requirements of due process. *Lex* at 404 (citing *Papafagos v. Fiat Auto, S.P.A.,* 568 F.Supp. 692 (D.N.H.1983)).

... The court must engage in a two-step analysis to determine whether jurisdiction over the defendant comports with due process: first, does the defendant have "minimum contacts" with the forum state, and, second, does assertion of personal jurisdiction offend traditional notions of fair play and substantial justice? *International Shoe* [*Co. v. State, Office of Unemployment Compensation and Placement* ], *supra,* 326 U.S. [310] at 316, 66 S.Ct. [154] at 158 [90 L.Ed. 95 (1945) ].

Minimum contacts are established when a defendant "purposefully directs" his activities to residents of the forum state, *Burger King* [*Corp v. Rudzewicz* ], *supra,* 471 U.S. [462] at 476, 105 S.Ct. [2174] at 2184 [85 L.Ed.2d 528] (1985) ] (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774–75, 104 S.Ct. 1473, 1478–79, 79 L.Ed.2d 790 (1984)), and the litigation results from alleged injuries that "arise out of or relate to" those activities, *Id.,* 471 U.S. at 472, 105 S.Ct. at 2182 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)).

*Lex* at 404. Here, defendant Goldstein allegedly entered into a partnership agreement or, at the very least, held itself out as a partner of the G & M Law Group of which defendant Shaines was also a member. Also, as indicated by their Martindale–Hubbell listing, Goldstein & Manello is "A Partnership including Professional Corporations" with a "Portsmouth New Hampshire Affiliated Office: Shaines, McEachern, Goldstein &

Manello ..." *See* Doc. 8, Exhibit A. Thus it can be said that Goldstein purposefully directed its activities to New Hampshire through its alleged partnership relationship with Shaines. Moreover, taking as true Johnson's contention that he was told that Goldstein & Manello would be involved in his case, the present litigation necessarily results from the alleged injuries that arose out of or were related to Goldstein's activities as a partner of Shaines. *Burger King, supra,* 471 U.S. at 472, 105 S.Ct. at 2182. By allegedly agreeing to enter into a partnership with Shaines, Goldstein "should have reasonably anticipated being 'haled into court' here." *Lex* at 405 (quoting *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). The alleged partners were on notice that in such relationship "they all act on behalf of one another within the scope of their partnership activity". *Donatelli* at 467 n. 5.

The court also finds that assertion of personal jurisdiction over Goldstein would not "offend traditional notions of fair play and substantial justice". *International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. at 158. In so holding, the court has weighed the burdens on defendant Goldstein against New Hampshire's interest in redressing injuries that actually occur within the state, *see Omni Hotels, supra,* at 751; *see also Lex* at 405, and has found the latter to outweigh the former. The court concludes, therefore, that Goldstein's contacts with New Hampshire satisfy the requirements of due process and the court thus has jurisdiction over defendant Goldstein and the G & M Law Group. Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(5) are therefore denied.

**2) Motion to Dismiss pursuant to 12(b)(6)**

■ Since the parties have submitted affidavits and other evidence outside the pleadings, the court will treat defendant's motion as one for summary judgment.

*Standard of Review*

■ Summary judgment is proper only if, viewing the record in the light most favorable to the non-moving party, the docu-ments on file disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988); Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit" are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.; Oliver,* 846 F.2d at 105. The moving party initially must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has made the required showing, the adverse party must "go beyond the pleadings" and designate specific facts to demonstrate the existence of a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553; *Oliver,* 846 F.2d at 105; Fed.R.Civ.P. 56(e). The federal rules "mandate[ ] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

*Discussion*

Defendant claims that the complaint does not allege that Goldstein had any duty to the plaintiff or that it had any role with respect to furnishing legal services to plaintiff; that Goldstein shared any responsibility for the conduct of plaintiff's case; or, that Goldstein agreed to assume any liability for the actions of Shaines. Defendant Goldstein concludes that the absence of any allegations creating any duty by Goldstein is fatal to plaintiff's claim.

■ In a suit against an attorney for malpractice, the plaintiff must prove, among other things, "the attorney-client relationship, or some other basis to establish the existence of a duty". *Fairhaven Textile v. Sheehan, Phinney, Bass & Green, Professional Assoc.,* 695 F.Supp. 71, 73 (D.N.H.

1988). As discussed above, defendant's liability arises from its alleged partnership with Shaines. Plaintiff, through affidavits and other evidence discussed in detail above, has produced material facts as to which there is a genuine dispute, i.e. whether a partnership relationship among the defendants existed. Therefore, defendants' motion for summary judgment is denied.

*Conclusion*

Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(5) and 12(b)(6) are denied.